## RAGLAND v. STATE.

Opinion delivered November 29, 1902.

1. BURGLARY—EVIDENCE OF INTENT.—An indictment for burglary with intent to commit grand larceny is sustained by proof that defendant, a male, about 1 o'clock at night, was frightened away after he had opened and entered a window of the bedroom of a female over 80 years of age, and the only female occupant of the house, who kept the postoffice in an adjoining room, where defendant knew that she sometimes kept registered packages of more than $10 in value. (Page 67.)

2. SAME—INTRUDER FRIGHTENED AWAY.—An indictment for burglary with intent to commit grand larceny is sustained by evidence of a breaking and entry with intent to commit the specific felony charged, though the offender was frightened off before he carried out his intent. (Page 67.)

3. SAME—DEFENSE.—Where it is shown that .defendant, accused of burglary with intent to commit grand larceny, entered a house at night with intent to steal money, it is no defense that there was no money in the house for him to steal. (Page 67.)

4. HEARSAY EVIDENCE—WHEN NOT PREJUDICIAL.—It was not prejudicial error to permit a witness to testify that he told another, on the morning of the alleged burglary, that someone tried to break in on the prosecuting witness last night, and that someone wanted to rob her or do something to her, there being no controversy about the fact that someone tried to break in on her. (Page 69.)

5. EVIDENCE—DIAGRAM.—A correct diagram of the buildings and of the direction of the tracks of the supposed offender was properly admitted in evidence on the trial of a burglary case; there being evidence to justify a finding that the tracks were defendant's. (Page 69.)

6. SAME—MEASUREMENT OF DEFENDANT'S SHOES AND TRACKS.—Where defendant made no objection to the measurement of his feet and shoes, and of the tracks he made, it was not improper to permit the person who made such measurements to testify concerning them. (Page 69.)

7. CONDUCT OF JUDGE—PREJUDICE.—In a prosecution for burglary, where the prosecution offered in evidence a plat of the premises, the court, in answer to an objection of defendant's counsel, said: "Tie a piece of red tape around that plat, and go ahead with the case." *Held*, that, in the absence of any proof that the remark was made in a petulant and angry manner, it was not prejudicial. (Page 70.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

*X. O. Pindall* and *Campbell & Stevenson,* for appellant.

There being no evidence to show intent to commit grand larceny, the defendant was guilty of a trespass at most. Underhill, Cr. Ev. § 377; 3 Green. Ev. § 92; Rapalje, Larc. § 354; 109 Ill. 109; 12 Nev. 37. In the absence of intent to commit a felony, the breaking and entering constituted a mere trespass. 42 La. An. 273; Arch. Cr. Pl. & Pr. 340; Roscoe, Cr. Ev. 365; 5 Am. & Eng. Enc. Law (2d Ed.) 59. The intent must be proved or implied from some overt act, if the felony is not actually carried out. 4 Park. Cr. Rep. 153; 5 Am. & Eng. Enc. Law, 59. The intent can-

not be implied from breaking and entering alone. 29 Ia. 316, 320; 36 Neb. 38. It was error to admit evidence as to measurements made from defendant's feet and tracks. Underhill, Cr. Ev. § 374; 7 Tex. App. 245; 63 Ga. 667. The remarks of the trial judge in the hearing and presence of the jury constituted error. 51 Mich. 177; 55 Kan. 351; 53 Mich. 355, 361; 57 S. W. (Tex. Cr. App.) 825.

*George W. Murphy, Attorney General,* for appellee.

There was evidence sufficient to justify the jury in finding that the intent was larcenous. Clark, Cr. Law, 238; 1 McClain, Cr. Law, § 506; 49 Ark. 514. There was no error in admitting measurements of defendant's tracks. 1 McClain, Cr. Law, §§ 405, 406.

WOOD, J. Appellant appeals from a conviction for burglary, and insists upon a reversal of the judgment for the following reasons:

(1) Because there was no evidence to show intent to commit grand larceny, the felony which it is charged he intended to commit. The proof tends to show that appellant, about one o'clock at night, opened a window of the bed room of the house of one Mrs. Amanda Grace, and thrust in his head, when she screamed and ran for aid. In the room adjoining her bed room, she kept the post office, and sometimes had registered packages therein of over the value of ten dollars. Appellant received his mail there, and sometimes got money orders and registered letters. Mrs. Grace was eighty years of age, and the only female occupant of the house.

To sustain this conviction, there must be evidence to justify the jury in finding that the appellant, at the time he broke and entered the house, intended to commit the crime of grand larceny. *Harvick* v. *State,* 49 Ark. 514; Clark, Cr. Law, p. 268; 1 McClain, Cr. Law, § 506. If the intent to commit the specific felony charged in the indictment exists at the time of the breaking and entry, the offense is burglary, though the offender be frightened off before he has carried out his intent. Clark, Cr. Law, *supra.* The question of intent was for the jury under the circumstances, and there was ample proof to sustain their verdict.

The post office was a money order office, and registered packages of value were received and forwarded from there. This appellant knew. It would have been of no consequence, even if there

had not been any money or any registered packages in the house at the time appellant broke and entered same, unless it had been shown that he knew that to be the fact at the time. *State* v. *Beal*, 37 Ohio St. 108; Clark, Cr. Law, *supra.*

Since Mrs. Grace was eighty years of age, it could hardly be said that appellant's motive was rape, rather than larceny, and, as no ill feeling toward any occupant of the house appears, it was more reasonable for the jury to determine that the motive was larceny, rather than that it was to commit some other felony. In short, as to whether the defendant intended to commit any felony at all, and, if so, what felony, were questions for the jury. They have said it was grand larceny, as charged.

In a case in California, the proof showed that the defendant, at a late hour of the night, after the family had retired and the lights had been extinguished, entered the building through a window, and was found in a bed room, in which a woman and three infant children were sleeping in one bed, that he seized the woman by the throat and threw himself across the bed, but on her making an outcry, left the building without any further act of violence, and without having committed a larceny. He was charged with burglary with intent to commit larceny, and contended on appeal that the verdict was not sustained by the evidence. The court said: "The intent with which he entered was a question of fact for the jury; and, though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances. The weight to be given to these was a question properly left to the jury; and when a person enters a building through a window at a late hour of night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under these circumstances." The court held as above, notwithstanding the woman in the house testified that it was her belief that the defendant entered the house with the intent to have sexual intercourse with her. *People* v. *Soto*, 53 Cal. 415. We cite this case to show how far the courts have gone in sustaining the verdict of a jury upon the question of intent, and not with the view of approving it as a correct doctrine under the facts of that case. It certainly presented much stronger ground for reversal upon the question of intent, on the facts, than the case at bar.

(2)  A witness, King, was permitted to testify that "he had told Tom Graves, on the morning of the alleged burglary, that some one tried to break in on Mrs. Grace last night, and that some one wanted to rob her or do something to her." This is urged as error. This statement of the witness King came in response to the request "to tell all he knew about it," and he was proceeding to tell what he did with reference to the tracks he had discovered coming from the post office to the blacksmith shop, and the above testimony, which was objected to at the time, came in as a part of the narrative. Of course, what the witness told Graves was not proper evidence, but we do not see how it could have prejudiced the jury against appellant. The fact was not controverted that some one "had tried to break in on Mrs. Grace." The witness did not say or intimate that appellant did it; and his opinion that "some one wanted to rob Mrs. Graves or do something to her," was not an intimation even that appellant was the guilty party, or that the crime intended was grand larceny. There was no reversible error in the admission of this evidence.

(3)  Appellant urges as error the introduction of a plat showing the situation of the buildings, direction of tracks, etc. But the plat was shown to be a substantially correct diagram of the situation of the buildings and direction of the tracks of the supposed offender which it purported to represent. All this was proper testimony. There was evidence to justify the jury in finding that the tracks, whose course was thus traced, were the tracks of defendant.

(4)  We find no error in the admission of evidence as to measurements made in the magistrate's court of defendant's feet, shoes and tracks. It does not appear that defendant made objection to making tracks for measurement, or that he objected to the measurement of his feet and shoes, and the tracks he made, at the request or upon the direction of the magistrate and other parties. For aught that appears to the contrary, the defendant was not averse to the making of tracks and having measurements taken of his tracks and shoes and feet. He may have been entirely willing to this proceeding, supposing that it would be to his advantage rather than to his detriment. In this state of the record, we are not called upon to decide whether such proceedings would be proper, if made over the protest and against the objection of the accused at the time, and we do not do so. There could certainly be no error

in this if the defendant did not object, or if he acquiesced in the proceeding. 1 McClain, Cr. Law, §§ 405, 406.

Moreover, the objection to this evidence was hardly sufficient to call in question the correctness of the ruling of the trial court · in its admission.

(5) In answer to an objection made by defendant's counsel to the introduction in evidence of the plat made by King and Graves, the trial judge said: "Tie a piece of red tape around that plat, and go ahead with the case." Counsel for appellant, in a very forceful and plausible argument, urge that these remarks were erroneous. They say, *inter alia,* that the "gratuitous showing of spleen" on the part of the trial court "could hardly have failed to prejudice the cause of appellant's attorneys." There is nothing in the language itself that evinces spleen upon the part of the trial judge toward counsel. The remarks themselves seem to have been said in a facetious spirit. There is nothing in the record to indicate the manner of the judge when making these remarks, and nothing in the remarks themselves prejudicial to appellant's cause. They were only tantamount, upon their face, to an adverse ruling upon counsel's objection, and the ruling itself was proper. Whether the remarks were indeed prejudicial depended entirely upon the manner of the judge in making them. If he was splenetic and petulant, as counsel say, showing a disgust and contempt for the efforts of the attorney faithfully put forth in his client's cause, his manner might, in such case, be highly prejudicial. It would, to say the least, be a great lapse from the dignity and decorum that should ever characterize the demeanor of a presiding judge, and a wide departure from the courteous treatment that should always be accorded counsel, while ruling adversely on some objection which he has honestly conceived and sincerely and respectfully urged in the interest of his client. But, in the absence of a showing to the contrary, we must presume that the learned judge, when making the ruling complained of, was complacent in manner and serene in spirit, rather than impertinent and angry.

(6) We find no error in the refusal of the court to give the eleventh and twelfth requests for instructions. The court had sufficiently covered all the points presented by the evidenc.

Affirm.