Bobby Darryl TILLMAN *v.* STATE of Arkansas

CR 89-90                                    777 S.W.2d 217

Supreme Court of Arkansas
Opinion delivered October 9, 1989

*John W. Achor*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Bobby Darryl Tillman, was convicted of first degree murder and sentenced to 40 years imprisonment. He argues that the evidence of premeditation and deliberation was insufficient and that the court erred in refusing to permit a police officer to testify on cross-examination with respect to an exculpatory statement Tillman made to the officer. We affirm because the evidence was sufficient to show premeditation and deliberation and, even if it were error to refuse the testimony, there was no prejudice.

Tillman admitted to the police and testified at the trial that he killed his former brother-in-law, Roosevelt Simmons, with a shotgun. There was evidence that the breakup of Simmons's marriage to Tillman's sister Carolyn occurred because Simmons had attempted to molest Carolyn's daughter. Simmons was a cocaine source for Tillman, and he and Tillman continued their association after Simmons's divorce from Carolyn.

Tillman testified that on February 12, 1988, he and Simmons were at Simmons's apartment. They got into an argument, and Tillman had difficulty leaving the apartment. His testimony and that of his brother-in-law, Ronnie Williams, showed that after Tillman left Simmons's apartment he called Williams to pick him up in Williams's car. Williams took Tillman to Tillman's home where Tillman obtained a shotgun. He then drove Tillman to Simmons's apartment. Tillman got out of the car. As Williams was leaving the apartment area, Tillman came running up to his car, without the shotgun, and got in. Williams drove Tillman back to Tillman's home. On the way, Tillman said, "I got him." When Tillman returned to his home, he told his wife the same thing.

Tillman testified that he had paid Simmons $25 for some cocaine but that Simmons had refused to give it to him. During their argument he became convinced that Simmons was going to kill Tillman's niece. He went home, got his shotgun, returned to Simmons's apartment, and first blew out the sliding glass patio door. He then went into the apartment firing the weapon and finally shot Simmons who was hiding in a closet.

## 1. Premeditation and deliberation

Tillman's argument is that his actions were so open they cannot be considered those of a rational person who planned the

homicide. He presented evidence that the combination of alcohol and cocaine found during the autopsy of Simmons's body might have caused Simmons to be very hostile. With this argument that he was afraid of Simmons, Tillman combines the threat to his niece, although he does not argue specifically that his acts should be condoned because he was acting in defense of another person.

The evidence of premeditation and deliberation was sufficient. Tillman left Simmons's apartment to obtain a potent weapon and then returned with the weapon and committed the killing by shooting Simmons in the right chest from a short distance. To show premeditation the state must prove Tillman (1) had the conscious object to cause death, (2) formed that intention before acting, and (3) weighed in his mind the consequences of a course of conduct. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3, *cert. denied* 459 U.S. 1022 (1980). In determining whether there was premeditation and deliberation, the jury may consider the nature of the weapon used, the extent and location of the wounds inflicted, and Tillman's actions. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987). *See also Weldon* v. *State*, 168 Ark. 534, 270 S.W. 968 (1925). We hold the evidence was sufficient.

## 2. The testimony

Officer Clyde Steelman witnessed the statement given by Tillman after he had turned himself in to the police. During cross-examination, Tillman's attorney asked Steelman: "And did you ask him this qustion and did he give this answer: 'Why did you kill Roosevelt this afternoon, what was the reason'?" The prosecution objected, and Steelman was not allowed to answer on the ground that it would have been hearsay evidence. Tillman's attorney made no offer to the court of the testimony the officer would have given had he been allowed to answer.

Tillman argues the answer to the question was admissible because A.R.E. 803(3) permits an exception to the hearsay rule for an excited utterance or because A.R.E. 804 permits an exception for a statement against interest where the declarant is unavailable because of a privilege. He also contends the lack of an offer of the evidence does not matter because it was clear from the context of the trial that he was trying to show he told the officer he shot Simmons because he feared Simmons would again molest his niece. Later in the trial he testified that that was what he had told

the police.

██ We find no need to discuss the cited rules. A.R.E. 103(a) provides that an evidentiary ruling will not be the basis of error unless "a substantial right of the party is affected. . . ." Even if the officer had been allowed to testify and had said Tillman told him of his fears, it could have made no difference in the outcome of this case. The evidence from which the jury concluded the killing was done with premeditation and deliberation would have been unaltered, and there is no argument that it would have or could have affected the sentence. We hold that in these circumstances no substantial right was affected, so the error, if any, in excluding it was not prejudicial. *Phillips* v. *State*, 293 Ark. 588, 739 S.W.2d 688 (1987).

Affirmed.